## JAMES P. ELLIS *vs.* THE COUNTY COMMISSIONERS OF BRISTOL.

The clerk of the county commissioners, though not appointed by them, is bound to obey their directions in making up their records.

Mandamus lies to the county commissioners to compel them to certify that the petitioner for the writ had a majority of the votes for county treasurer, although another candidate has been by them declared to be county treasurer, and is in possession of the office.

The inhabitants of Fall River, after accepting the *St.* of 1854, c. 257, passed on the 12th of April 1854, by which the town of Fall River was made a city, had no authority to vote for county treasurer at a general town meeting held in May 1854, nor at a meeting held by wards for the purpose of organizing the city government as well as voting for county treasurer. And a certificate of the town clerk of Fall River of the votes cast for county treasurer at a general town meeting held in May, after the expiration of the twenty days within which the inhabitants were to vote on the acceptance of the act, which does not state that the act was not accepted, shows upon its face that the meeting was not legally held.

MANDAMUS, issued on the 25th of October 1854, on the petition of James P. Ellis. The writ recited that, at the annual meetings of the several towns in the county of Bristol for 1854, the said Ellis was duly chosen county treasurer for the year ensuing, and the votes were duly sorted, recorded and returned to the county commissioners, and opened and compared by them at their meeting at Taunton on the fourth Tuesday of September, and it was then found by said returns that said Ellis had the majority of said votes, and was then ready to accept the said office, and to give bonds, as the law directs; that the whole number of votes so returned was 8,876, of which 4,450 were for said Ellis, 4,242 for Samuel R. Townsend, and 184 for all other persons, " all of which by the returns made to the said county commissioners, and by the record of said commissioners, appears;" and

required the respondents to declare said Ellis to have been duly elected, or show cause to the contrary thereof.

On the 27th of October, the respondents made a return, in which they certified as follows: 1st. That said Townsend is in possession of the office of county treasurer, and is in fact county treasurer of said county; that, upon opening and comparing the votes, it appeared that Townsend had received the highest number of votes according to the returns which were, in the judgment of the respondents, genuine and legal; and that Townsend, being a suitable person, and having accepted the office, and taken the oath and given the bonds required by law, was declared by them to be county treasurer:

2d. That, before declaring Townsend to be county treasurer, they gave Ellis a hearing by counsel, and, after such hearing and full deliberation upon the matters of fact and questions of law involved, they did adjudicate and decide that the highest number of votes had been received by Townsend, and did declare him to be county treasurer:

3d. That they received returns in due form from every town and city, except Fall River, of the votes given for county treasurer at their annual meetings, which were all held in February, March or April 1854; that according to said returns the whole number of votes was 7,724, of which Townsend received 3,819, Ellis 3,723, and 182 were given for other persons, and according to these returns Townsend received the highest number of votes:

That on the 12th of April 1854, the legislature passed an act, (*St.* 1854, *c.* 257,) to go into operation from and after its passage, erecting the town of Fall River into a city, by § 28 of which it was provided that the act should be void unless accepted by the inhabitants at a general town meeting held within twenty days after its passage; that it was accepted in the manner therein provided at such a meeting held on the 22d of April, and thereupon took full effect, and the town became a city:

That no annual meeting was held in Fall River in February, March or April, either in general town meeting or in wards; and that nothing purporting to be a return of votes at any such meeting had been received:

That after the acceptance of the act, the selectmen of Fall River divided the city into six wards, in the manner provided by § 3 of the act; and after such division, issued separate warrants for each of the six wards, warning the voters to meet, to act on five articles specified, four of which were for the choice of ward and city officers, and the fifth "to bring in their votes for county treasurer on a separate ballot;" and these warrants were duly served and returned; and in pursuance thereof, meetings of the inhabitants were held in wards on the 6th of May:

That no general meeting of the inhabitants of Fall River was held on the 6th of May, or at any other time hitherto, except the meeting for voting on the acceptance of the act; that no return, or copy of record, of votes for county treasurer, had been received by them from Fall River, except the document copied in the margin,* the signature to which they did not doubt to be the genuine signature of J. R. Hodges, who was clerk of the town of Fall River before it became a city; that if the votes set forth in said return had been counted, the votes in the county would have been, for Ellis 4,450, for Townsend 4,242, for others 184, and Ellis would have received the highest number of votes.

The respondents did not deny that Ellis was a suitable person, and ready to accept the office, and to take the oaths, and give the bonds, required by law; and concluded their return thus: "But after hearing the said Ellis as aforesaid, and after due examination and deliberation, we rejected the return from Fall River, and declared the said Townsend to be county treasurer,

* Commonwealth of Massachusetts. County of Bristol. At a legal meeting of the qualified voters, being inhabitants of the town of Fall River, holden in said town, on Saturday, the sixth day of May, in the year of our Lord eighteen hundred and fifty four, the qualified voters aforesaid gave in their votes for Treasurer for the county of Bristol. The whole number of votes given in were sorted and counted in open town meeting, by the moderator and town clerk, and were for the following persons: For James P. Ellis, seven hundred and twenty-seven. For Samuel R. Townsend, four hundred and twenty three. For Benjamin Winslow, one. For George Robertson, one. Dated at Fall River, the sixth day of May, A. D. 1854. A true copy of record.

Attest, J. R. HODGES, Town Clerk of Fall River.

as aforesaid. And therefore we cannot and ought not to declare the said James P. Ellis to be the said county treasurer."

At the hearing upon this return, before the full court, on the 27th of October, the petitioner's counsel proposed to read a paper, purporting to be the record of the proceedings of the court of county commissioners held at Taunton on the fourth Tuesday of September 1854, attested by their clerk, and filed among the papers in this case. This record was as follows: " Upon opening and examining the returns of votes given in said county of Bristol for county treasurer for the year ensuing, the said commissioners find the said returns of votes to be as follows : " [The number of votes returned from each of the towns and cities, except Fall River, was then stated, amounting in all to 3,819 for Townsend, 3,723 for Ellis, and 182 for other persons.] " The return of votes given in Fall River in said county is duly made and opened, and is in the words and figures following: " [The return from Fall River was then copied as in the margin of p. 372.] " And it appearing to said commissioners, from the return aforesaid, that the said vote of Fall River was not given within the time prescribed by law, it is therefore rejected ; and it appearing that of the votes legally given, excluding the votes of Fall River, Samuel R. Townsend has a plurality, the said commissioners declare the said Samuel R. Townsend legally elected treasurer of said county of Bristol for the year ensuing, and he is accordingly sworn faithfully to perform the duties of said office. James Sproat, Clerk."

" After making up the foregoing record, and on the eighteenth day of October A. D. 1854, the following form of record was received from the chairman of said county commissioners, viz : ' The return received from Fall River was rejected, because the votes for county treasurer were not given in within the time required by law, and likewise because it was incorrect, inasmuch as no such town meeting as is described in the return was held that day in Fall River, the balloting having been in wards, and the votes were not sorted, counted, declared and sealed up in open town meeting by the moderator and town clerk, as alleged in said return.' Jas. Sproat, Clerk."

*R. H. Dana, Jr.* for the respondents. This paper is not properly in the case. The writ does not command the commissioners to produce their record, and this paper was not made a part of their return, and was not filed here by them, but by their clerk. The clerk, instead of making up the record according to the instructions of the commissioners, has added those instructions as a mere memorandum, under a date at which there was no court of county commissioners. If the commissioners were now in session, they could, like any other court of record, order their clerk to amend their record; but they are not in session.

*J. H. Clifford,* for the petitioner. The county commissioners cannot be permitted to say that the record was not filed by them, but by their clerk. Their clerk is a public officer, equally with them; and is made by statute independent of them, being appointed by this court. Rev. Sts. *c.* 84, § 5.

SHAW, C. J. The county commissioners have the same power over their clerk as any other court of record; and their clerk, although not appointed by them, is bound to conform to their directions. Otherwise, they would be subject to him.

At the suggestion of the court, it was then agreed by the parties, that the record filed, as amended by the memorandum of the chairman of the commissioners, should be taken to be a true record, to be entered and extended at a subsequent meeting of the commissioners.

*J. H. Clifford & C. I. Reed,* for the petitioner, to the point that mandamus would lie, cited *Strong, petitioner,* 20 Pick. 484, and *Dew* v. *Judges of Sweet Springs,* 3 Hen. & Munf. 1.

*R. H. Dana, Jr.* for the respondents. Mandamus will not lie when an office is occupied by a person under color of title. *The Queen* v. *Guardians of St. Martin's in the Fields,* 17 Ad. & El. N. R. 149. *The King* v. *Mayor &c. of Winchester,* 7 Ad. & El. 215. *The Queen* v. *Councillors of Derby,* 7 Ad. & El. 419. *The Queen* v. *Phippen,* 7 Ad. & El. 966. *The Queen* v. *Mayor &c. of Leeds,* 11 Ad. & El. 512. *The King* v. *Mayor &c. of Oxford,* 6 Ad. & El. 349. Impey on Mandamus, 145. *The People* v. *Mayor &c. of New York,* 3 Johns. Cas. 79. *The People* v. *Vail,* 20 Wend. 12. *The People* v. *Supervisors of Greene,*

12 Barb. 217. *Commonwealth* v. *County Commissioners*, 6 Whart. 476. *Bonner* v. *The State*, 7 Georgia, 473. The person who is found by the commissioners, on opening and comparing the returns, to have the majority of votes, if he accepts the office, " shall be declared to be the county treasurer ; " or if he declines accepting, the commissioners shall appoint. Rev. Sts. *c.* 14, §§ 44, 46. This declaration is a decisive act, a proclamation to the world, and is so far a judicial act that it cannot be revised on mandamus. The oath and bond, required by § 45, are probably preliminary to this declaration ; but if not, they cannot be indirectly inquired into. In *Strong's case*, 20 Pick. 484, the mandamus issued to the board of examiners, who are not a permanent body, with a clerk, like the respondents ; and the act required of the examiners was not a decisive public act, but merely to give the persons having a majority of the votes " written notice of their election." Rev. Sts. *c.* 14, § 18.

The grounds of the arguments on the question, whether the vote of Fall River was properly rejected by the respondents, sufficiently appear in the opinion, which was delivered on the 28th of October by

SHAW, C. J. The questions are, whether upon the return of the commissioners, and their record, as amended, the prosecutor of this writ was entitled to a certificate and adjudication that he had the highest number of votes for county treasurer, and whether this question can be inquired into, under this process. We are not now to consider whether the county commissioners can be required to place the prosecutor in the office ; it may be that even if he should succeed and show that he ought to have been declared duly elected, he may be obliged to resort to his *quo warranto*, in order to remove the present incumbent from the office, before he can be restored. And we understand that an application for such a proceeding is now pending. But we are satisfied that it is competent for this court, on this writ, at the instance of the prosecutor, to inquire into the facts, and to require the county commissioners to do what it was plainly their duty to do, and what it is still in their power to do, to declare and certify, if such was the fact, that the prosecutor had

the highest number of votes for the office, as one step, and one important step, towards obtaining his right, without which he could not obtain it. And the prosecutor at present asks the court to go no further.

We proceed at once, therefore, to inquire whether the commissioners ought to have received and counted the votes of Fall River, as legal and valid; if they should have been so counted, the prosecutor, as the return shows, would have been chosen; and this is the real and sole question.

The mode of choosing county treasurers is provided for by Rev. Sts. *c.* 14, §§ 43 *& seq.* By § 43 they are to be chosen annually, at the annual meetings of towns. By Rev. Sts. *c.* 15, § 18, the annual meetings shall be held in March or April, or, by *St.* 1837, *c.* 52, in February, if the town so vote. Recurring to Rev. Sts. *c.* 14, by § 44 the votes for county treasurer shall be sorted in open town meeting by the moderator and town clerk; the names of the persons voted for, and the number of votes for each, shall be recorded by the clerk in the town records; and an attested copy thereof shall be transmitted, under seal, to the county commissioners at their next meeting.

A compliance with these directions is prerequisite to the legality of the votes given for county treasurer, without a substantial compliance with which votes cannot be received and counted by the commissioners. It is very clear that these provisions were not complied with by the town of Fall River, previously to the time when that corporation was constituted a city; and therefore, unless there is some provision, in the act establishing the city, which will render the proceeding which actually took place valid, the votes were not legal and regular.

This act was passed on the 12th of April 1854, to go into operation from and after its passage. It was manifestly framed with a view to establish a city government, in place of a town government, if the inhabitants by their votes should so determine, within a short, limited time; to suspend the annual town meeting in that town, required by law to be held in the month of March or April, until it should be determined whether the inhabitants would accept the charter, and to provide for holding

it, with full legal effect, within a limited time afterwards, if the charter should not be accepted; and if it should be accepted, to vest power in the existing town officers, to enable them to divide the city into wards, to call ward meetings for the election of wardens and other ward officers, and of mayor and other city officers, to provide effectually for organizing the city government and putting it into operation. We are to bear in mind that the very purpose of the charter was to change the corporation from that of a town to that of a city; that it could not be both at the same time, that the moment it became a city, the distinctive functions and powers of a town were merged, and no longer existed. Now, whatever might be the condition of this corporation, from the time of passing the act to the time it was accepted by vote of the inhabitants on the 22d of April, from and after such acceptance the town became a city, and any authority which it formerly had, to call and hold a town meeting, to choose a moderator, to give in votes, and which the clerk had to record, certify and transmit them, had ceased. The authority given by § 25, to hold their annual meeting after the termination of the month of April, depended upon the contingency that the charter should not be accepted; the charter was accepted, and this contingency did not happen.

The authority to vote for county, state and federal officers, given by § 18, is limited to the time fixed by law for these elections, and requires the votes to be taken in wards, to be counted, declared and registered in open ward meeting, and returned to the mayor and aldermen, to be recorded by the city clerk; and the mayor and aldermen are to examine, certify and transmit them to the county commissioners or other officers, as the case may require.

The election in question, in our opinion, failed to comply with the requisites of the law, whether it be regarded as made under the town or city government. As votes given by a town, they were bad, because the town had ceased to exist; there was no authority to hold a town meeting; and it was not held in February, March or April.

Under the city government, the election was void, because the

32 *

selectmen, under § 18, authorizing them to call ward meetings, for the purpose of organizing the city government, and limited to the power of choosing ward and city officers, had no authority to insert an article in their warrant requiring the inhabitants to give in their votes for county treasurer; because there was no city clerk to whom the ward officers could send a transcript of their record of the votes, and there could be no city clerk till the council had been organized to choose one; there were no mayor and aldermen, to receive and examine the votes from the ward officers, and transmit the result of the election to the county commissioners; nor did they ever make any such return. Taking the facts as they appear upon the whole return, we are satisfied that the proceedings had at Fall River, at the meetings at which votes for county treasurer were given in, were unauthorized and void, and that the votes from that town were rightly rejected.

It was intimated, on the part of the prosecutor, that the certificate actually sent to the county commissioners, signed by the town clerk, ought to have been taken as conclusive. We have not thought it necessary to express any opinion upon the abstract question, because we think that, taking that certificate alone, the result would be the same. Assuming that the commissioners were not authorized to take any notice of the act incorporating the town of Fall River as a city, and that they were bound to take it, upon the face of the certificate, that the town of Fall River, in the exercise of their functions as a town, held an open meeting on the 6th of May, and that the votes for county treasurer were given in, sorted and declared in an open town meeting, still these votes must be rejected, because given at a meeting held after the time limited by law.

But all laws establishing municipal corporations are to be regarded as public laws, to be taken notice of and acted upon by all persons concerned. The county commissioners, therefore, were bound to take notice of the act of the 12th of April, and that Fall River was thereby constituted a city and ceased to be a town, if the inhabitants should so determine within twenty days, and that must be determined by the 2d of May; it was

only in the event that the act should not be accepted, that the annual meeting might be held after April. If this was a contingency of which the commissioners could take notice, then they knew that it did not take place. If it was a fact of which they could not take notice, then it should have been certified by the town clerk as the only ground of authority on which the inhabitants could legally hold their annual town meeting in May. Either way, therefore, the certificate, upon its face, carried the evidence that the town meeting was not legally held, and that the votes could not be received and counted for county treasurer. *All further proceedings stayed.*